Filed 1/8/15
See Dissenting Opinion

CERTIFIED FOR PUBLICATION

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Respondent, | E060272 |
| v. | (Super.Ct.Nos. APP1300118 & RR182259VR) |
| VIKTORS ANDRIS REKTE, | |
|     Defendant and Appellant. | OPINION |

APPEAL from the Superior Court of Riverside County. William A. Anderson, Temporary Judge. (Pursuant to Cal. Const., art. VI, § 21.) Reversed.

D. Scott Elliot for Defendant and Appellant.

Gregory P. Priamos, City Attorney, Kristi J. Smith and Rosemary Koo, Deputy City Attorneys, for Plaintiff and Respondent.

Viktors Rekte received a citation by mail for a violation of Vehicle Code, section 21453, subdivision (a), for failing to stop at a red light, based on a photograph taken pursuant to the Automated Traffic Enforcement System (ATES). At trial, the court overruled in limine objections to the admission of the photographic evidence on

1

foundational grounds.  Thereafter, defendant presented expert testimony to rebut the presumption of the reliability of the photographic evidence due to noncompliance with the California Manual on Uniform Traffic Control Devices (MUTCD or Manual).  The trial court found defendant guilty of the offense.  Defendant appealed to the Appellate Division of the Riverside County Superior Court, arguing, among other things, that the presumptions established by Evidence Code sections 1552 and 1553, affecting the burden of producing evidence, were rebutted.  The Appellate Division affirmed the judgment and subsequently certified the matter for transfer to this court.  We reverse.

## BACKGROUND

Prior to the commencement of trial, defendant made an in limine motion to exclude the photographic and video evidence on grounds:  (1) the yellow light interval did not conform with the standards required by the MUTCD; (2) the defendant was not provided with pretrial discovery of the video clip upon which the ATES citation was based; and (3) the geometry of the intersection and placement angles of the ATES equipment and traffic signals obscured the view of a substantial portion of the traffic signal light.

The trial court denied the in limine motion.  Defendant also objected to the foundational statement and introduction of the evidence of the videotape, or the declarations of any Redflex employee, which objections were overruled.  The matter

2

proceeded to trial with Operator Teagarden appearing on behalf of the City of Riverside.[1]

Operator Don Teagarden is a retired Riverside Sheriff's Department deputy. Since May 2010, he has been employed by the Riverside Police Department to review violations of the Automated Traffic Enforcement System (ATES).[2] The automated camera system captures drivers who enter an intersection while facing a red traffic light. The system is triggered when a car goes through a red light while driving at least 15 miles per hour. The ATES system was installed and maintained by Redflex Traffic Systems (Redflex).

The system takes a series of still photographs and a 12-second video, depicting the elements of the violation. The images are transmitted electronically to the Redflex office in Phoenix, where they are reviewed by Redflex personnel. Redflex then sends a compact disc with the images and the 12-second video on it to the Riverside Police Department, where Operator Teagarden reviews them. Digitally printed on the photographic image is information relative to the date, time, location, vehicle speed, and how long the signal light had been in the red at the time the photograph was taken. Although Operator Teagarden did not personally test the sequence, he testified that the

---

[1] The Riverside City Attorney's Office does not prosecute violations of the California Vehicle Code (http://www.riversideca.gov/attorney/ [as of October 7, 2014]).

[2] Operator Teagarden referred to the system as the Automated Red Light Camera System and the parties referred to the system by the acronym ARLE. However, the system's actual name is Automated Traffic Enforcement System. (Veh. Code, § 21455.5.) We will use the acronym ATES for this system.

3

yellow phases met or exceeded the minimum "recommendations"[3] established by the California Department of Transportation (CalTrans).

On November 5, 2012, Operator Teagarden received digital photographs and a video clip from Redflex, showing defendant's vehicle, as it was photographed on October 26, 2012, traveling southbound on Tyler Street where it intersects with State Route 91. The digital information on the photograph, received by electronic means from Redflex, indicated defendant was traveling at 15 miles per hour in a posted 35 mile an hour zone. The photographic and video evidence showed the defendant's vehicle to be approximately six feet behind the limit line when the signal had been red for at least 0.96 seconds, and showed the vehicle failed to stop for the red light, continuing to make a right turn.

According to the digital information on the photographic evidence he received, Operator Teagarden testified that the yellow light interval time was 3.65 seconds, which exceeds the 3.6 seconds required for a 35 mile an hour roadway. After reviewing the photographic and video evidence, Operator Teagarden issued a citation for violating Vehicle Code section 21453, subdivision (a), which was then mailed by the vendor, Redflex Traffic Systems, to defendant.

---

[3] In reality, conformity with the uniform standards prescribed by the California Department of Transportation is mandatory. (Veh. Code, §§ 21400, 21401.) At oral argument, counsel for the City indicated that the witness actually used the term "requirements" in describing the MUTCD provisions, but after further review, we were unable to find such testimony.

On cross-examination, Operator Teagarden acknowledged he could not tell if the monthly inspections of the equipment conducted by Redflex included verification of the time intervals for the signal lights, and did not know if anyone employed by the City of Riverside checked to make sure the system was calibrated properly.

The defense presented expert testimony by engineer Sean Stockwell, who visited the location of the infraction on more than one occasion, before and after the date of the offense, to time the yellow light interval. To time the interval, Stockwell took four video clips of the changing traffic signals, which he uploaded onto a video program on his computer, in order to get a time index. On each occasion, using the software indexing capability, the yellow light interval was found to be 3.5 seconds, plus or minus 0.07 seconds, which is less than the 3.6 second minimum interval required by the MUTCD.

In examining the actual intersection where the offense was to have occurred, Stockwell noticed that the traffic signals are in perfect alignment with the camera which is mounted in the center median of the road. At that angle, a driver in the right-hand turn lane looking ahead would have to turn left 20 degrees in order to see the stop light. There is a 24 degree difference between the driver at the limit line and the ATES camera system, so as the driver approaches the intersection, he or she has to look more and more to the left. The angle obscures 41 percent of the traffic signal light. The MUTCD requires that signal placement, aiming and adjustment is to optimize visibility of the signal's indications to approaching traffic, not to the ATES camera.

When the case was closed to evidence, the defense argued for dismissal because the geometry of the intersection and placement of the signals requires the driver to look

5

away from his or her direction of travel in order to see the light, and because the yellow light interval was less than the mandated 3.6 seconds, demonstrating that the equipment was not functioning properly and the evidence was unreliable. The court found beyond a reasonable doubt that defendant violated Vehicle Code section 21453, subdivision (a) and imposed a fine of $490.00. Defendant appealed to the Appellate Division of the Riverside County Superior Court. On November 20, 2013, the appellate division affirmed the judgment on the infraction.

On December 4, 2013, defendant applied for certification to transfer the matter to this court. On December 19, 2013, the Appellate Division of the Riverside County Superior Court granted that request.

**DISCUSSION**

Defendant raises three issues on appeal: (1) whether the trial court committed error by referring to *People v. Gray* (2011) 199 Cal.App.4th Supp. 10 (*Gray*), review granted June 20, 2012, S202483 [superseding opinion filed March 13, 2014, *People v. Gray* (2014) 58 Cal.4th 901]; (2) whether the trial court committed error in applying Evidence Code sections 1552 and 1553; and (3) whether the trial court committed error relating to the burden of proof in infraction cases.

The first issue involves the trial court's reference to a case pending review that has now been superseded by a subsequent opinion of the California Supreme Court. The second and third issues, which are interrelated and involve the burden of producing evidence, are issues of first impression. Because these issues are so intertwined, we will deal with them as one issue.

6

*1. Any Reference to People v. Gray Was Harmless.*

Defendant argues that a miscarriage of justice occurred due to the trial court's reference to the case of *Gray*, formerly at 199 Cal.App.4th Supp. 10, because that case had been depublished. The Supreme Court had granted review on June 20, 2012, so it was not citable as precedent. (Cal. Rules of Ct., rules 8.1105(e)(1) & 8.1115 (a).) The holding of *Gray* was inapposite to the issues of the instant matter so any reference to that decision was harmless.

The appellate decision in *Gray* involved a limited issue: whether the local jurisdiction failed to comply with Vehicle Code section 21445.5 (regarding the requirement of posting warning notices for 30 days before issuing citations upon commencement of the ATES program). The trial court's reference to that decision, whether published or not, was irrelevant to the issues posited by defendant at trial: whether the evidence lacked sufficient foundation to be admissible, and whether the equipment was properly calibrated where it recorded a yellow light interval of 3.65 seconds, in the face of expert testimony that the actual interval was only 3.5 seconds. Thus, any reliance by the trial court on that decision was harmless error.

In any event, on March 13, 2014, the California Supreme Court issued its opinion, which superseded the original decision. The Court concluded that failure to comply with the 30-day period of issuing warning notices before using a red light camera to issue citations is not a jurisdictional precondition to enforcement of the red light traffic law. (*People v. Gray, supra,* 58 Cal.4th at p. 911.)

7

The trial court mistakenly believed the *Gray* decision related to the admissibility of the digital photographs produced by an ATES camera over objections similar to those raised by defendant here. Nevertheless, the admissibility of the evidence over foundational objections as to hearsay and authentication have been addressed by the recent holding of *People v. Goldsmith* (2014) 59 Cal.4th 258 (*Goldsmith*), holding that the evidence is not hearsay, and is deemed properly authenticated, albeit subject to the defendant's demonstration that it was unreliable. (*Goldsmith, supra,* at pp. 269, 274.) The trial court's erroneous reliance on *Gray*, after review had been granted in that case, was harmless.

*2. Defendant's Expert's Testimony Rebutted the Presumptions Under Evidence Code, Sections 1552 and 1553, requiring Exclusion of the Redflex Evidence, and Resulting in a Judgment Unsupported by Evidence.*

Defendant argues that the court erred in applying Evidence Code Sections 1552 and 1553, respecting the information depicted in the records of Redflex Traffic Systems, consisting of the traffic citation, the 12-second video, and several still pictures of the vehicle with computer data imprinted at the top of the photographs. In this respect, defendant argues that the presumptions embodied in Evidence Code sections 1552 and 1553 were improperly viewed as presumptions affecting the burden of proof, rather than presumptions affecting the burden of producing evidence. We agree.

We begin by noting that our Supreme Court has recently ruled on the admissibility of Automated Traffic Enforcement System (ATES) evidence over defense objections based hearsay and lack of authentication. In *Goldsmith*, the court held that the trial court did not err in admitting the ATES evidence because the presumptions of authenticity

8

provided by Evidence Code sections 1552 and 1553 supported a finding, in the absence of contrary evidence, that the printed versions of ATES images and data were accurate. (*Goldsmith, supra,* 59 Cal.4th at p. 269.)

In reaching its decision, the Supreme Court acknowledged that the presumptions set forth in Evidence Code sections 1552 and 1553 affect the burden of producing evidence, but observed that such presumptions do not require any weight to be given to the evidence if admitted, did not reduce the prosecution's burden of proof to show defendant's violation beyond a reasonable doubt, and did not deny the defendant a fair opportunity to rebut the presumed accuracy or reliability of the offered evidence. (*Goldsmith, supra,* 59 Cal.4th at p. 270, citing *Western & A. Railroad v. Henderson* (1929) 279 U.S. 639, 642 [73 L.Ed. 884, 49 S.Ct. 445].)

"A presumption is either conclusive or rebuttable. Every rebuttable presumption is either (a) a presumption affecting the burden of producing evidence or (b) a presumption affecting the burden of proof." (Evid. Code, § 601.) The burden of producing evidence means the obligation of a party to introduce evidence sufficient to avoid a ruling against him on the issue. (*People v. Atwood* (2003) 110 Cal.App.4th 805, 811; *Tusher v. Gabrielsen* (1998) 68 Cal.App.4th 131, 145.) In a criminal case, because the prosecution bears the burden of establishing guilt, it may not rest its case entirely on a presumption unless the fact proved is sufficient to support the inference of guilt beyond a reasonable doubt. (*County Court v. Allen* (1979) 442 U.S. 140, 167 [99 S.Ct. 2213, 60 L.Ed.2d 777].)

9

The burden of producing evidence as to a particular fact is initially on the party having the burden of proof as to that fact. (Evid. Code, § 550 *People v. Barasa* (2002) 103 Cal.App.4th 287, 296.) Once the plaintiff presents evidence to establish each element of its case, the defendant has the burden of going forward with its own evidence as to those issues. (*Barasa, supra*; see also, Evid. Code, § 606; *Pfeifer v. John Crane, Inc.* (2013) 220 Cal.App.4th 1270, 1309-1310.) Where the opposing party produces evidence undermining the presumption, the presumption is disregarded and the trier of fact must decide the question without regard to it. (Evid. Code, §§ 603, 604; *Craig v. Brown & Root* (2000) 84 Cal.App.4th 416, 421.) In other words, the other party is no longer aided by the presumption and must prove the fact in question. (*Rancho Santa Fe Pharmacy, Inc. v. Seyfert* (1990) 219 Cal. App. 3d 875, 882.)

Evidence Code sections 1552 and 1553 provide a presumption for both the existence and content of computer information and digital images that the printed versions purport to represent, and establish, preliminarily, that a computer's print function has worked properly. (*Goldsmith, supra,* 59 Cal.4th at p. 269.) They may support a finding that, in the absence of contrary evidence, the printed versions of ATES images and data are accurate representations of the images stored in the ATES equipment. (*Ibid.*)

By their express language, Evidence Code sections 1552 and 1553, create presumptions affecting the burden of producing evidence. "If a party to an action introduces evidence that a printed representation of the computer information or computer program is inaccurate or unreliable, the party introducing the printed

representation into evidence has the burden of proving, by a preponderance of evidence, that the printed representation is an accurate representation of the existence and content of the computer information or computer program that it purports to represent." (Evid. Code, § 1552, subd. (a).) This subdivision is expressly applicable to the printed representation of computer-generated information stored by an ATES. (Evid. Code, §1552, subd. (b).) Evidence Code section 1553 contains similar language relating to the burden of proof that digital images or video are accurate, after a party introduces evidence that the images are inaccurate or unreliable.

Here, the defendant undermined the presumptions created by Evidence Code sections 1552 and 1553. He produced expert testimony and evidence that the printed representation of computer generated information (Evid. Code, § 1552) and the video or digital images admitted into evidence (Evid. Code, § 1553) were inaccurate and unreliable. An inadequate yellow light interval renders a safe stop impossible, and constitutes an emergency justifying the entry into an intersection when the signal turns red. (*People v. Ausen* (1940) 40 Cal.App.2d Supp. 831, 835.) The burden of producing evidence shifted to the city once the presumption was rebutted, but the expert's testimony and opinions were not refuted. Because the digital images were previewed by Redflex before being forwarded to the Riverside Police Department, and because digital images are susceptible to manipulation, it was incumbent upon the City to introduce evidence that the printed representations were accurate. (See *People v. Beckley* (2010) 185 Cal.App.4th 509, 515-516.) Otherwise, the images were inadmissible because they were not properly authenticated. Thus, the question of guilt should have been determined

11

*without* the photographic evidence.  Without that evidence, there was no reliable evidence of a violation of Vehicle Code section 21453, subdivision (a).

The dissent urges that the testimony of the defense expert did not prove that the photographs, and the time stamps on the photographs, did not show what they purported to show:  that the defendant ran a red light.  (Dis., J. King, p.1.)  The dissent relies on the presumed reliability of the photographs provided by Evidence Code sections 1552 and 1553.  (*Ibid*.)  This misses the point:  the presumption of reliability of the photographs was rebutted.  Those photographs—and all the time stamped information thereon—were inadmissible.  The lack of reliable evidence (*admissible* photographs or testimony from a percipient witness) that defendant ran the red light requires reversal of the conviction for lack of substantial evidence.

Evidence, to be substantial, must be of ponderable legal significance, reasonable in nature, credible, and of solid value.  (*People v. Johnson* (1980) 26 Cal.3d 557, 576.)  Ordinarily, we presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.  (*People v. Davis* (1995) 10 Cal.4th 463, 509.)  But evidence that raises only a suspicion of guilt is insufficient to support a conviction.  (*People v. Reyes* (1974) 12 Cal.3d 486, 500, citing *People v. Redmond* (1969) 71 Cal.2d 745, 755; *People v. Ramon* (2009) 175 Cal.App.4th 843, 851 (*Ramon*).)

A reasonable inference may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work; a finding of fact must be an inference drawn from evidence rather than a mere speculation as to probabilities without evidence.  (*Ramon, supra,* 175 Cal.App.4th at p. 851, citing *People v. Perez* (1992) 2

12

Cal.4th 1117, 1133.)  The sole evidence presented to the trier of fact in the present case consisted of photographs, initially presumed to be reliable, but which presumption was rebutted.[4]  As a result, the foundational requirement of authentication was lacking. Operator Teagarden was not a percipient witness to the violation.  As a matter of law, without the photographic evidence, there is insufficient evidence to support the judgment.

The People argue that the yellow light interval issue is irrelevant because the MUTCD provides for a 3.0 second yellow light interval for "protected right turns."  It is true that Section 4D.26 provides for a shorter minimum yellow change interval for "protected" left or right turns.  However, "protected mode" refers to "a mode of traffic control signal operation in which left or right turns are permitted to be made when a left or right GREEN ARROW signal indication is displayed."  (MUTCD, § 1A.13 (160).) There was no evidence that the location of the current offense was a "protected right turn" and no evidence of a green arrow.  For this reason, the minimum yellow light interval was governed by Table 4D-102 of the MUTCD, which prescribes a 3.6 second minimum yellow light interval for a street having 35-mile per hour limit.

---

[4] The trial court did not expressly rule on the admissibility of, or rely on the declaration of the Redflex technician that accompanied the photographs, in ruling on their admissibility.  It is unclear whether or to what extent the court relied on the declaration, and the parties have not briefed this particular issue.  If the court did rely on the declaration, such reliance would have violated the defendant's constitutional right to confrontation because the technician did not testify and declarations, like affidavits, constitute testimonial hearsay.  (*Crawford v. Washington* (2004) 541 U.S. 36, 51-52 [124 S.Ct. 1354, 158 L.Ed.2d 177]; see also, *Bullcoming v. New Mexico* (2011) 564 U.S. __ [131 S.Ct. 2705, 2716-2717, 180 L.Ed.2d 610] [re admissibility of lab report containing a testimonial certificate].)

13

At oral argument, the People argued that if reversal is required because evidence was erroneously admitted at trial, double jeopardy is not implicated and the proper remedy is to remand for retrial.  (*People v. Llamas* (1997) 51 Cal.App.4th 1729, 1741.) Remand for retrial is not a viable option where the inadmissible evidence was the *sole* evidence of guilt.

Because the prosecution did not produce reliable evidence of the offense, the judgment must be reversed.

## DISPOSITION

The judgment is reversed.

CERTIFIED FOR PUBLICATION

RAMIREZ        
P. J.

I concur:

CODRINGTON     
J.

[*People v. Rekte*, E060272]

King, J., Dissenting.

I dissent. I would affirm because substantial evidence shows defendant and appellant Victors Rekte ran the red light, as charged, on October 26, 2012, and was therefore guilty of violating Vehicle Code section 21453, subdivision (a).

Contrary to the majority's conclusion, Evidence Code sections 1552 and 1553 do not require reversal of the judgment. The defense expert, Sean Stockwell, testified that the "yellow light interval," or the amount of time the yellow light was on before the light turned red, was only 3.5 seconds, plus or minus 0.07 seconds, or less than the 3.6 seconds required by the California Manual on Uniform Traffic Control Devices. This testimony was relevant to whether defendant *had sufficient time* to stop before the light turned red, but the testimony in no way indicated that the critical still photographs and the time stamps on those photographs did not show what they purported to show: defendant running the red light.

Indeed, the Automated Traffic Enforcement System-generated photographs and time stamps were presumptively accurate (Evid. Code §§ 1552, 1553), and showed defendant traversing the intersection when the light was red (Veh. Code, § 21453, subd. (a)). Even if the yellow light interval was only 3.5 seconds, not the 3.6 seconds depicted on the still photographs, the photographs show the light was red and had been red for an appreciable amount of time when defendant entered the intersection. Other evidence showed that in a 35-mile-per-hour zone, the yellow light interval should be 3.6 seconds.

1

But here, defendant was only traveling at 15 miles per hour as he approached and ran the light.[1]

In sum, the defense produced no evidence to rebut the presumed accuracy or reliability of the still photographs, or when those photographs were taken, or that they did not in fact show what they purported to show:  defendant running the red light.  The majority errs in concluding the court was required to disregard the photographic and time stamp evidence showing defendant ran the red light.  (*People v. Goldsmith* (2014) 59 Cal.4th 258, 270-271.)

KING            
J.

---

[1] Under the California Manual of Uniform Traffic Control Devices (2012 ed.), part 4, chapter 4D, table 4D-102, a vehicle traveling at 15 miles per hour covers a distance of 22 feet per second.  The "Minimum Yellow Change Interval Timing" table takes into consideration the posted speed limit, the deceleration rate, and deceleration distance, as well as reaction time and reaction distance.  For a posted speed limit of 25 miles per hour or less, the yellow light interval should be 3 seconds, and at 30 miles per hour, the interval should be 3.2 seconds.  Accepting the defense expert's testimony that the yellow light interval here was only 3.5 seconds, defendant, traveling at 15 miles per hour, had ample time to perceive, react, and bring his car to a stop before entering the intersection.  (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 775-776, fn. 5 [court may take judicial notice of provisions of CalTrans Traffic Manual].)